## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,
STATE OF ILLINOIS *ex rel.*
YURY GRENADYOR

                Plaintiffs,

v.                      )

)

UKRAINIAN VILLAGE PHARMACY, INC.  )
And PHARMALIFE, LLC.             )

)

           Defendants.     )

1:09-cv-07891
Judge James F. Holderman
Magistrate Judge Susan E. Cox

F I L E D

DEC 2 1 2009 MR
DEC 21 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### COMPLAINT

For their complaint the United States of America ex rel., Yury Grenadyor, ("United States"), and the State of Illinois ex rel., Yury Grenadyor, ("Illinois") allege as follows:

1.     The United States brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. Sections 3729-33, and to recover all available damages and other monetary relief under the common law or equitable theories of fraud, unjust enrichment, payment under mistake of fact, recoupment of overpayments, and disgorgement of illegal profits.

2.     The State of Illinois brings this action to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq.,* and to recover all available damages and other monetary relief under the common law or equitable theories of fraud, unjust enrichment, payment under mistake of fact, recoupment of overpayments, and disgorgement of illegal profits. The State of Illinois also brings this action to recover an amount equal to either 3 times the value of the property wrongfully obtained or, if no property was wrongfully obtained, twice the value of the property attempted to be obtained, whichever amount is greater, plus reasonable attorneys fees in violation of 720 ILCS 5/46-5 (a),

5/46-1, 5/46-1.1, 5/46-2 and 5/46-5 for insurance fraud, fraud on a government entity and aggravated fraud.

3.       These claims are based upon defendants' false claims made in connection with the dispensing of pharmaceuticals at the Ukrainian Village Pharmacy in Chicago, Illinois, and the policies and procedures of its parent company, PharmaLife, LLC.  Defendants billed Medicare, Medicaid as part of their scheme to defraud.

4.       Defendants knowingly and intentionally engaged in the following pattern of fraud and abuse:

(a)       the Ukrainian Village Pharmacy ("Pharmacy") routinely waived co-payments for all prescriptions/claims under $5 in violation of the federal and state fraud and abuse laws;

(b)       the Pharmacy routinely failed to reverse claims to Medicare and Medicaid for prescriptions not picked up by patients; instead, Pharmacy opens bottles and restocks and resells prescription medications many times over, continuing to double and triple bill the federal health care programs;

(c)       Pharmacy offers illegal inducements to patients in exchange for Medicare/Medicaid business, including offering occasional free prescriptions, various therapeutic remedies, caviar and other foodstuffs, and other additional free items;

(d)       Pharmacy, on information and belief, induces physicians in the Chicago land area to participate in its fraudulent scheme to bill Medicare and Medicaid by offering illegal incentives to the physicians to refer patients for their prescriptions to the Pharmacy and by

setting up a system wherein the physician faxes a prescription to the Pharmacy setting up an illegal referral stream for the Pharmacy to collect fraudulent payments from the federal health care programs and which, may, on information and belief, also contribute to over-billing or double-billing to the Medicare and Medicaid system because such faxed prescriptions may be for phony patients;

(e)     Pharmacy illegally and in violation of the Illinois Whistleblower Reward and Protection Act, reduced Plaintiff's hours and then fired him in retaliation for asking questions about suspected fraudulent activities he became aware of and reported to his superiors at the Pharmacy.

5.     This Court possesses subject matter jurisdiction to entertain this action under 28 U.S.C. Sections 1331 and 1345. The Court possesses supplemental jurisdiction to entertain the common law and equitable causes of action pursuant to 28 U.S. C. Section 1367(a). The Court may exercise personal jurisdiction over the defendant pursuant to 31 U.S.C. Section 1367(a). The Court may exercise personal jurisdiction over the defendant pursuant to 31 U.S.C. Sections 3732(a) and because the defendant is located and transacts business in this District.

6.     Venue is proper in the District under 31 U.S.C. Section 3732 and 28 U.S.C. Section 1392(b) and (c) because the defendant is located and transacts business in the District.

7.     The United States brings this action on behalf of its agencies, the Department of Health and Human Services ("HHS"), and the Centers for Medicare and Medicaid Services ("CMS"), on behalf of the Medicaid program.

8.      The State of Illinois brings this action on behalf of its agencies, the Department of Human Services, the Illinois Department of Healthcare and Family Services, the Department of Insurance, and the Department of Public Health, on behalf of the Medicaid program.  It also brings this action on behalf of the Department of Financial and Professional Regulation for alleged actions of insurance fraud.

9.      Plaintiff and Relator, Yury Grenadyor, is a resident of Des Plaines, Illinois, a licensed pharmacist in Illinois, and a former employee of Ukrainian Village Pharmacy, in Chicago, Illinois.  Mr. Grenadyor brings this action for violations of 31 U.S.C. Sections 3729 *et. seq.*, and 740 ILCS 175/1 *et. seq.*, on behalf of himself, the United States, and the State of Illinois, pursuant to 31 U.S.C. Section 3730(a)(1)(B) and 740 ILCS 175/4(b)(1).

10.      Defendant, Ukrainian Village Pharmacy, Inc., is located at 2317 W. Chicago Avenue in Chicago and is a subsidiary of PharmaLife, LLC., a pharmacy chain offering pharmaceutical services to customers in Illinois, Georgia, Minnesota, Florida, Missouri, Massachusetts and Ohio.  PharmaLife, LLC is registered in Georgia as a domestic profit corporation under the name PharmaLife Consultants, Inc. (incorporated in Georgia).  PharmaLife Consultants, Inc, also has a registered agent in Florida under the name PharmaLife Buying Group, LLC.  PharmaLife markets itself as the "nation's premier integrated total healthcare provider, combining the nation's leading healthcare services with a pharmacy chain."  Its services include a full line of products ranging from orthotics and diabetic footwear to power wheel chairs, hospital beds, oxygen and other medical equipment.  It partners with adult day health services centers and other healthcare and life science organizations.

11.      The False Claims Act ("FCA") provides in pertinent part:

4

(a)     Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or (3) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,…is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person…

(b)     For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information;

(i)     has actual knowledge of the information;

(ii)    acts in a deliberate ignorance of the truth or falsity of the information; or

(iii)   acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

(31 U.S.C. Section 3729)

12.     The Illinois Whistleblower Reward and Protection Act provides in pertinent part that:

(a)     Liability for certain acts. Any person who:

(i)     knowingly presents or causes to be presented, to an officer or employee of the state or member of the Guard a false or fraudulent claim for payment or approval;

(ii)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by

5

the State;...is liable to the State for a civil penalty of not less than $5,000.00 and not more than $11,000.00, plus 3 times the amount of damages which the State sustains because of the act of that person...

(b)    Knowing and knowingly defined. As used in this Section, the terms "knowing" and "knowingly" mean that a person, with respect to information;

(i)    acts in deliberate ignorance of the truth or falsity of the information; or

(ii)    acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

(740 ILCS 175/3)

13.    Routine waiver of co-payments by providers is unlawful because it results in false claims, and violations of the Anti-kickback statute, and excessive utilization of items and services paid by Medicare or other federal health care programs, such as Medicaid. When providers forgive financial obligations for reasons other than genuine financial hardship of the particular patient or customer, they may be unlawfully inducing that patient to purchase items or services from them in violation of the Anti-kickback statute. In this case, the Pharmacy, among other inducements, waived the co-pays for prescriptions $5 or under as an inducement to purchase their prescriptions from them. Many customers are "dual eligible" meaning that they are both eligible for Medicare and Medicaid. Dual eligible beneficiaries are automatically eligible for the low income subsidy from Medicare. In those situations, the waiver of the co-pay violated both federal and state law statutes because the Pharmacy received payments from a federal health care program from Medicare and Medicaid. A federal health care program is defined as any program that provides health benefits ...funded directly, in whole or in part, by the United States Government... or any State health care program. The Pharmacy facilitates this fraud by its system of recording sales. Its computer system is not linked to its cash register and

6

the prescriptions are not scanned like they are at the national chains, like Walgreens and at CVS. Instead, the Pharmacy charges the proper amount in its computer records, but fails to actually collect the co-pay and put that money in the cash register.

14.     A provider, practitioner or supplier who routinely waives Medicare co-payments is misstating its actual charge. Pharmacy routinely waives co-payments of $5 or under for its prescriptions. For example, if the Pharmacy claims that its charge for a prescription is $50, but routinely waives the co-payment, the actual charge is $42.50. Medicare should be paying 85% of $42.50 (or $36.12), rather than paying 85% of the $50. As a result of Pharmacy's misrepresentation, the Medicare program is paying $6.38 more than it should for the item. If, for example, the Pharmacy fills 40 prescriptions a day on average (or 14,600 per year), based on the example above, it could be defrauding the Government by approximately $93,148 per year just by waiving the co-payments. The Pharmacy has been operating since November, 2004 in Chicago. Based on 5 years of operation, assuming that Medicare should pay 85% of the cost, it's possible that the Pharmacy has defrauded the Government approximately $465,740. If Medicare pays 75% of the actual cost, at 40 prescriptions a day over 5 years, the Pharmacy defrauded Medicare approximately $912,500 by waiving the co-pay for each and every prescription under Medicare Part D and under Illinois Medicaid regulations.

15.     Defendant, Pharmacy, knowingly and intentionally routinely waived co-payments and is subject to criminal prosecution under the Anti-kickback statute. Whoever submits a false claim to the Medicare program (for example, a claim that misrepresents an actual charge) may be subject to criminal, civil or administrative liability for making false statements and/or submitting false claims to the Government. 18 U.S.C. 287 and 10001; 31 U.S. C. 3729; 42 CFR 1320a-7a. Penalties can include imprisonment, criminal fines, civil damages and forfeitures, civil monetary

penalties and exclusion from Medicare and the State health care programs under the Anti-kickback statute. 42 U.S.C. 1320a-7(b)(7).

16.     At the Pharmacy, approximately 10% of patients do not have their prescriptions delivered. Of those patients, approximately 5% fail to pick up their prescriptions. Pharmacy fails to reverse claims crediting Medicare and Medicaid and other third-party payors and instead restocks the pharmaceuticals and resells the drugs. Failure to reverse the claims violates the False Claims Act in pertinent part:

> *(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval...(G) is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person.*
>
> *(31 U.S.C. Section 3729)*

17.     Assuming that Pharmacy fills approximately 40 prescriptions a day and 10% (or 4) of the patients do not have the prescriptions delivered. Of the 4, 5% (or .2 per day) fail to pick up the prescriptions. Over a year, 73 prescriptions at approximately $50 per prescription equal $3,650, or $18,250 over five years. It equals 365 false claims over the same period if the Pharmacy only resells the prescription once. If it resells it a number of times, the claims and dollars go up exponentially.

18.     The Anti-kickback statute makes it a criminal offense to knowingly and willfully offer, pay, solicit, or receive any remuneration to induce or reward referrals of items or services reimbursable by a federal health care program. Where remuneration is paid purposefully to induce or reward referrals of items or services payable by a federal health care program, the

Anti-kickback statute is violated. By its terms, the statute ascribes criminal liability to parties on both sides of an impermissible "kickback" transaction. For purposes of the Anti-kickback statute, "remuneration" included the transfer of anything of value, directly or indirectly, overtly or covertly, in cash or in kind. (42 U.S.C. 1320a-7a(a))

19. Defendant, Pharmacy, knowingly, intentionally and systematically, offers its patients inducements in exchange for federal health care dollars from Medicare and Medicaid business. It routinely offers various therapeutic remedies, caviar and other foodstuffs, and occasional free prescriptions, when persons have their prescriptions filled at the Pharmacy, all in violation of the Anti-kickback statute. (42 U.S.C. 1320a-7a(a))

20. Moreover, defendant, Pharmacy, knowingly and intentionally set up a procedure to facilitate such inducements whereby physicians fax prescriptions to the Pharmacy; the Pharmacy delivers the majority of prescriptions ordered. With the delivery of the prescription, the Pharmacy sends bags of "goodies," the inducements named in No. 19 above, to the patients; the patients then give the driver a paper prescription for a refill. On information and belief, the physicians who fax such prescriptions suggest to their patients that they fill their prescriptions at the Pharmacy because the Pharmacy will waive the co-pay and will offer the inducements named above. On information and belief, judging from the number of prescriptions sent to the Pharmacy per year by certain providers, and the other available pharmacy chains like Walgreens and CVS located in the area, it is more than likely that such providers have also been given inducements by the Pharmacy to steer their patients to the Pharmacy in violation of the Anti-kickback laws.

21.     Dispensing drugs on the basis of a faxed prescription allows for the possibility that some faxed prescriptions may not be legitimate prescriptions, and may guarantee that some prescriptions will not be picked up because they are phony prescriptions.  If the prescription is not picked up, it may be double-billed or triple-billed, allowing the Pharmacy to defraud the federal health care programs by continuing its practice of not reversing such claims when the prescription is not picked up.  The fraud could be confirmed by printing reports of specific patient names and checking the patient names against the signature logs.  The unsigned names on the signature logs could be compared to the prescription number on the insurance payment reports to determine whether the payments in question were reversed and whether the prescription was actually picked up by the patient.

22.     The Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4 (g), gives potential and actual whistleblowers remedies if an employee becomes a victim of retaliation at the hands of his employer.  The barriers against employer retaliation include protection from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment. Employees are entitled to all the relief necessary to make them whole.  This relief includes reinstatement with seniority status into the previous position, double the amount of damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

23.     Plaintiff was discharged in October, 2008.  During the summer of 2008, Plaintiff was asked to consider becoming a shareholder in the Pharmacy's business.  As such, he began asking question about the financial records of the Pharmacy so that he might obtain a professional evaluation of the business.  He communicated with and was negotiating with Michael Bogacheck, the Executive Vice President of PharmaLife, in Atlanta, Georgia.

24.     Around that same time (June, July and August, 2008), Plaintiff began to notice some irregularities in the way the Pharmacy handled its business. He noticed that the national chain drugs stores issued coupons for certain gift cards or money off products at their pharmacies, but noted that the coupon specified that such coupons would not apply to federally-funded health care program prescriptions. That led Plaintiff to question whether the free gifts that he witnessed the Pharmacy giving to its customers, both through its delivery service, and for walk in customers, was a violation of federal law or state law. He did some internet research and suspected that such acts may violate federal and state laws. He also noticed that the Pharmacy was waiving its co-pays to customers with co-pays for prescriptions of $5 and under. He noticed this because he witnessed pharmacy staff waiving the co-pays hundreds of times.

25.     Plaintiff became uncomfortable with such procedures (the "goodie bags," the waiver of co-pays, and the failure to reverse claims for drugs not picked up by customers), and alerted his superiors at the Pharmacy. At meetings during July, August and September, 2008, Plaintiff told his superiors that he was uncomfortable with such practices and that they should seek legal advice. His superiors brushed him off at least two times when he raised his concerns.

26.     During this same period, Plaintiff's hours were reduced and his superiors told him that maybe "he wasn't comfortable to be a shareholder." His superiors at the Pharmacy said that he was "raising too many questions," and made comments trying to get Plaintiff to quit. At this time he also noticed some other bad business practices which he also brought to the attention of his superiors. He did so because he still held out hope that he could encourage the owners to seek prudent legal advice, follow it, and adopt better and smarter business practices.

27.    He asked Michael Bogacheck to investigate the irregularities in the bookkeeping that he witnessed regarding what he considered to be imprudent business practices.    No legitimate investigation ever took place and Plaintiff was demoted (hours reduced) and discharged soon after that because "he was no longer needed."

28.    Defendant, Pharmacy, knowingly and intentionally, discharged Plaintiff in retaliation for reporting to his superiors that:

(a)    they should not be making false claims to the Government through their practices of waiving co-pays;

(b)    they must reverse claims to the federal health care programs when the prescription is not picked up by a patient;

(c)    they should not double or triple bill claims to Medicare and Medicaid; and

(d)    they should not continue their practices of giving incentives to customers for federal health care plan business in violation of federal and state laws.

29.    Defendant, Pharmacy, knowingly and intentionally engaged in a pattern of fraud and abuse, as more fully appears above, in violation of the Federal False Claims Act, the Illinois Whistleblower Reward and Protection Act, state and federal anti-kickback laws and other various Drug Enforcement Agency ("DEA") regulations.

**THEREFORE,** the plaintiffs, the United States of America ex rel., Yury Grenadyor, and the State of Illinois ex rel. Yury Grenadyor, ask that the Court grant the following relief:

12

(a)     Three times the damages sustained by the United States Government because of the fraud;

(b)     An additional $5,000 to $10,000 for each false claim the defendant made to the United States Government;

(c)     Three times the damages sustained by the State of Illinois because of the fraud, and $11,000 for each false claim the defendant made to the State of Illinois;

(d)     Three times the value of the property wrongfully obtained because of insurance fraud, or twice the value of the property attempted to be obtained because of fraud, fraud on a government entity and/or aggravated fraud, plus reasonable attorneys fees;

(e)     Between 15% and 30% of the recovery awarded to plaintiff, Yury Grenadyor;

(f)     Relief including reinstatement with seniority status into the Plaintiff's previous position, two times the damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees;

(g)     The costs of this civil action;

(h)     Such other relief as the Court may find appropriate.

Respectfully submitted,

YURY GRENADYOR, Plaintiff

By: _Kathleen Horalek_____

One of his attorneys

13

Judith S. Sherwin
Kathleen F. Howlett
SHEFSKY & FROELICH, LTD.
111 E. Wacker, Suite 2800
Chicago, IL 60601
Attorney No. 29143