IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA; STATES OF ILLINOIS and GEORGIA; and the COMMONWEALTH OF MASSACHUSETTS,** *ex rel* **YURY GRENADYOR,**<br><br>Plaintiffs,<br><br>v.<br><br>**UKRANIAN VILLAGE PHARMACY, INC.; BUCKHEAD PHARMACY, INC.; MEI SERVICES, INC.; STORCHAK, PHARMACY, LLC; GLOBAL PHARMALIFE, LLC; BUCKHEAD PHARMACEUTICAL ASSOCIATION, INC.; PHARMALIFE MASSACHUSETTS, INC.; MIKHAIL BOGACHEK a/k/a MICHAEL BOGACHEK; EDUARD BOGACHEK a/k/a EDWARD BOGACHEK; VLADAMIR STORCHAK; SEMEN DINKEVICH; SVITLANA KHARLAMOVA; VASILY SHEVCHUK; and JOHN DOES 1-100,**<br><br>Defendants. | **Case No. 09 C 7891**<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court are multiple Motions to Dismiss filed by Defendants. For the reasons stated herein, these Motions are granted, and the Third Amended Complaint is dismissed with prejudice.

**I.  BACKGROUND**

The Court presumes familiarity with its September 5, 2012 Order granting Defendants' Motions to Dismiss Relator Yury Grenadyor's (the "Relator") Second Amended Complaint. *See,* ECF

No. 267. As many of the allegations in the new Complaint are the same as in its predecessor, the Court will provide only a brief summary of the allegations before discussing some that differ from the earlier Complaint.

Relator worked as a pharmacist at Defendant Ukrainian Village Pharmacy ("UVP") in Chicago, Illinois from April 2006 to October 2008. He dispensed prescription medication to customers and billed government healthcare programs, including Medicaid and Medicare, for those prescriptions. Relator claims that while he was employed at UVP, he learned that Defendants violated the federal Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b(b)(2)(B), and the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733, through a scheme to defraud that involved providing inducements to customers (such as expensive food or waived co-payments) and billing the government for medicine that was never provided to the intended recipient.

UVP is a privately-held corporation owned jointly by Defendants Mikhail Bogachek ("M. Bogachek"), his uncle Semen Dinkevich ("Dinkevich"), Svitlana Kharlamova ("Kharlamova") and Vasily Shevchuk ("Shevchuk"). The other corporate Defendants are pharmacies or entities that Relator claims are involved with purchasing pharmaceuticals for the pharmacy Defendants. Unlike in his previous Complaints, Relator makes it clear that there is no direct parent/subsidiary relationship between UVP and the other corporate Defendants.

- 2 -

Despite this lack of corporate relationship, Relator reasserts his allegations that Eduard Bogachek and Mikhail Bogachek (collectively, "the Bogacheks") are the architects of the alleged scheme to defraud the government. As in his previous Complaint, Relator alleges that the Bogacheks control all of the corporate Defendants through threats and intimidation, as well as through control of each pharmacy's inventory purchasing. So thoroughly do the Bogacheks control the corporate Defendants that Relator claims that each is an alter ego of the Bogacheks and thus, the corporate Defendants are liable for the Bogacheks' acts and vice-versa.

Relator filed this *qui tam* action on December 21, 2009. He submitted this action to the United States and the State of Illinois for review around that time, and both declined to intervene. Since then, Relator's Complaint has gone through several iterations. Relator has dropped voluntarily a number of Defendants, and causes of action, as the case has progressed.

The Court dismissed Relator's Second Amended Complaint on September 5, 2012 after the Defendants moved to dismiss, as that Complaint suffered from a number of deficiencies. ECF No. 267. Among other shortcomings, the Court found that the Second Amended Complaint: (1) failed to allege that UVP or its agents certified in writing, prior to billing Medicaid or Medicare, that it would abide by the AKS; (2) failed to plead the alleged fraud with particularity; and (3) failed to allege clearly the relationship of UVP to the other Defendants. *Id.* at 2, 5, 13-15, 17-19. The Court

made it clear to Relator that repeated failure to cure pleading deficiencies was grounds to deny amendment, and that he should be diligent about addressing such issues. *Id.* at 21.

Relator, to his credit, has narrowed his Third Amended Complaint by dropping several categories of claims, such as his retaliation claims and conspiracy allegations. Indeed, Relator even dropped some claims in his opposition brief. Relator also attempted to supplement his allegations regarding the Bogacheks' control over the corporate Defendants.

Generally, Relator's alleged fraudulent scheme is comprised of two types of unlawful conduct. As in the previous Complaint, Relator alleges that Defendants provided kickbacks to patients. These alleged kickbacks took two forms: (1) gifts of gourmet food and medicine to patients and (2) waiver of patients' required co-payments. The second component of the alleged scheme involves Defendants submitting claims for medication that never reached the intended recipients. As they did with the Second Amended Complaint, Defendants filed a number of Motions to Dismiss contesting the sufficiency of Relator's allegations on a variety of grounds.

## II.  **LEGAL STANDARD**

For purposes of a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all inferences in a plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.,* 634 F.3d 901, 903 (7th Cir. 2011). A

plaintiff need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

However, the False Claims Act is an anti-fraud statute, and as such, claims made pursuant to the act are held to the higher pleading standard of Federal Rule of Civil Procedure 9(b). *United States ex. rel Kennedy v. Aventis Pharms., Inc.,* 610 F.Supp.2d 938, 941 (N.D. Ill. 2009). Rule 9(b) requires a party to state with particularity the circumstances constituting fraud. *Id.* Thus, a plaintiff must plead the "who, what, where, when and how" of the alleged fraud. *Id.* Heightened pleading is also required for state law fraud claims brought in federal court. *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 470 (7th Cir. 1999). A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. *Mason v. Medline Indus.,* 731 F.Supp.2d 730, 735 (N.D. Ill. 2010).

### III. ANALYSIS

#### A. FCA Claims (Counts I-II)

"The FCA is the government's primary litigative tool for combating fraud." *United States ex rel. Sharp v. Consolidated Med. Transp., Inc.,* No. 96 C 6502, 2001 U.S. Dist. LEXIS 13923 at *14

(N.D. Ill. Sept. 4, 2001). Claims under the FCA must be pled according to Rule 9(b)'s heightened standard, because the statute "condemns fraud but not negligent errors or omissions." *United States ex rel Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 376 (7th Cir. 2003).

Relator alleges a scheme to defraud comprising two main activities: (1) kickbacks to patients and (2) charging for pills never received by the intended beneficiaries. Relator attempted to plead the former allegations regarding kickbacks, which took the form of gifts and waived co-payments, in his previous Complaint. The Court, however, found those allegations insufficient for several reasons, including their lack of specificity and the lack of any allegations that Defendants submitted certifications of compliance to the government. Relator also alleged in the previous Complaint that Defendants charged for pills that were never received by the patients. But those allegations lacked any specific examples of such actions. Without rehashing all of the arguments addressed in the Court's September 5, 2012 Order, the sufficiency of the allegations related to each of these two activities will be examined in turn.

### *1. Kickback Allegations*

An FCA claim has three essential elements: (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false. *United States ex rel. Barbara v. Family Health Network,* No. 09 C

6022, 2013 U.S. Dist. LEXIS 29620 at *7 (N.D. Ill. Mar. 4, 2013) (citing 31 U.S.C. § 3729(a)(1); *United States ex rel. Gross v. AIDS Research Alliance-Chi.,* 415 F.3d 601, 604 (7th Cir. 2005)). Because Relator bases his FCA claims on alleged false certification of compliance with statutory requirements (the "AKS"), he must also allege that the certification of compliance is a condition of or prerequisite of government payment. *See, Barbara,* 2013 U.S. Dist. LEXIS 29620 at *7; *Mason,* 731 F.Supp.2d at 734.

As the Court pointed out in its September 5, 2012 Order, despite basing many of its allegations on violations of the AKS, nowhere in the previous Complaint did Relator allege that Defendants filed false certifications. *See,* ECF No. 267 at 17 (quoting *Mason,* 731 F.Supp.2d at 734). After explaining its view that an implied false certification claim would not be recognized under the law of this Circuit (a view the Court maintains and will not revisit here), the Court mandated that "Relator must allege false certification if he repleads." ECF No. 267 at 19.

Relator seeks in his new Complaint to meet this requirement by alleging that, "upon information and belief" Defendants Kharlamova, M. Bogachek and Veselov, as authorized officials of UVP, Buckhead (Ohio) and Global PL, respectively, submitted a CMS-855b enrollment application to the Centers for Medicare and Medicaid Services (the "CMS"). Third Am. Compl. ¶¶ 14, 24, 27. Relator alleges that these applications read, in part, that "I agree to abide by the Medicare laws. . . . I understand that payment of a claim by

Medicare is conditioned upon the claim and the underlying transaction complying with such laws . . . (including, but not limited to, the Federal anti-kickback statute and the Stark law.)" *See, e.g., id.* ¶ 14. Relator claims that this certification was false, however, since the signatories knew that all pharmacies controlled by the Bogacheks waived co-payments and provided inducements to patients. Relator claims that this "really is the end of the analysis: Defendants falsely promised to follow the law, did not do so, and knowingly submitted claims tainted by that broken promise." Pl.'s Omnibus Opp. to Summ. J. at 6, ECF No. 299.

The first flaw with these allegations is that Relator makes most of them "upon information and belief," but provides no factual support for those beliefs. Basing allegations on information and belief, without reference to the factual underpinnings of those beliefs, generally does not satisfy the specificity required when pleading fraud. *See, Jones v. Hoosman,* No. 05 C 2909, 2006 U.S. Dist. LEXIS 31807 at *10 (N.D. Ill. May 9, 2006). It is clear law in this Circuit that "the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 684 (7th Cir. 1992). Relator fails to present the factual basis for his "information and belief"

- 8 -

allegations, and thus they fail to meet Rule 9(b)'s particularity requirements.

Setting aside the improper nature of the allegations Relator makes "upon information and belief," several courts in this District have found that CMS enrollment applications cannot serve as the basis for an FCA claim based on anti-kickback allegations. *See, e.g., Kennedy,* 610 F.Supp.2d at 946; *see also, United States ex. rel Wildhirt v. AARS Forever, Inc.,* No. 09 C 1215, 2011 U.S. Dist. LEXIS 37122 at *13-14 (N.D. Ill. Apr. 6, 2011). Indeed, as Relator admits, that certification in the application is a promise. Pl.'s Omnibus Opp. to Summ. J. at 6. As Judge Matthew Kennelly explained in *Kennedy,* when faced with similar allegations:

> [Relators] have identified no express false certification of compliance with the anti-kickback statute. Rather, they allege only that the hospitals promised they would comply with the statute and affirmed their understanding that if they did not do so, they would be ineligible for Medicare participation. This is a forward-looking statement – a promise or undertaking – not a false representation. Relators have not alleged, let alone identified, any certification by a hospital, in connection with a Medicare claim, that it had acted in compliance with the anti-kickback statute.

*Kennedy,* 610 F.Supp.2d at 946; *see also, Wildhirt,* 2011 U.S. Dist. LEXIS 37122 at *13-14 ("Although the complaint alleges that Defendants were required to certify that they *would* comply with applicable regulations as a condition of *enrolling* in Medicare and Medicaid programs, the complaint does not allege that Defendants

were required to accompany each *claim for payment* with a certification that they *had* complied with applicable regulations."). Thus, even if Relator had pled his certification allegations with the requisite level of specificity required by Rule 9(b) instead of baldly "upon information and belief," the certification upon which he seeks to base his claims is insufficient. As such, for this reason alone, his FCA claims based on the kickback allegations must be dismissed. *See, Kennedy,* 610 F.Supp.2d at 947 (dismissing FCA claims based on kickback allegations); *see also, United States ex rel. Upton v. Family Health Network,* No. 09-cv-6022, 900 F.Supp.2d 821, 834-35 (N.D. Ill. 2012) (dismissing FCA claims for failing to allege certifications were conditions for payment).

### 2. *Charging for Medicine Not Received by Patients*

Relator also alleges that part of the scheme orchestrated by the Bogacheks involved charging for pills that were never received by the intended patients. Relator alleges that the Bogacheks directed the managers of the pharmacy Defendants to fax prescription refill requests for Medicare and Medicaid beneficiaries to physicians' offices for authorization even when neither the doctor nor patient requested it and the prescription was not necessary. On occasions when the physician would authorize such a refill, Relator claims it was "particularly likely" that the patient would not pick up the medicine since he did not know the prescription had been filled. Third. Amend. Compl. ¶ 160. Relator

claims the Defendants would often ask for refills on non-chronic medications, such as antibiotics, without the patients' knowledge. Allegedly, the Bogacheks then directed the pharmacy managers to bill Medicare and Medicaid for these prescriptions, even though the patients never received their medication. Relator also alleges that the Bogacheks directed that these false claims not be credited back to the government.

Unlike in the previous Complaint, Relator now provides two specific examples of such alleged behavior, although both occurred at UVP in Chicago. For example, with respect to one of the patients, Relator alleges that:

> 169. On April 14, 2008, UVP obtained prescriptions for Patient H for a 10-day supply of the antibiotic amoxicillin (30 capsules of 500 mg each) ("amoxicillin") and a 4 oz. bottle of cherry-flavored syrup ("antihistamine"). UVP filled both of these prescriptions and Defendant Kharlamova directed that charges for them be electronically submitted to the State of Illinois via its Medicaid program. Via its Medicaid program, the State of Illinois paid $8.51 for the amoxicillin and $2.57 for the antihistamine. However, Patient H never received the amoxicillin or the antihistamine.
>
> 170. Furthermore, at the Bogacheks' orders and direction, Kharlamova directed that the charges for the antihistamine and amoxicillin not be reversed. Accordingly, neither Kharlamova nor the pharmacy technicians working at her direction (Irina Milovanova, Oleksandra Polovinko, and Nadia Gnopko) ever reversed the charges for the antihistamine or amoxicillin, even though Patient H never received them.

Third Am. Compl. ¶¶ 169-170.  Relator claims that "[a]s a result of these orders by the Bogacheks and Kharlamova," the claims for reimbursement for these medications stated falsely that Patient H received the medication.  *Id.* ¶ 171.

As the Court explained when it dismissed Relator's last Complaint, specific allegations are required in pleading fraud to "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  ECF No. 267 at 13 (quoting *Ackerman,* 172 F.3d at 469).  As explained previously, pleading fraud with particularity requires providing at least one specific instance of wrongdoing that satisfied the who, what, where, when and how requirements of Rule 9(b).  *Id.* at 13.  While Plaintiff meets some of these requirements, he again falls short in meeting the high pleading standards of Rule 9(b).

In the allegations above, Plaintiff provides a specific patient, a specific date, and a specific prescription.  But the allegations of the actual fraudulent activity, and who actually perpetrated it, are vague.  After alleging generally a scheme that involved Defendants contacting physicians to refill unnecessary or unsolicited prescriptions, even if they were unnecessary, Relator simply alleges "UVP obtained prescriptions for Patient H," and "UVP filled both of these prescriptions."  *Id.* ¶ 169.  Relator then alleges Kharlamova directed the charges for these prescriptions to be submitted electronically for Medicaid reimbursement.  Those allegations fail to say who at UVP obtained the prescriptions or

- 12 -

how.  They also fail to indicate what Kharlamova's explicit direction was, to whom she gave it and who submitted the charges to the government for reimbursement.  More importantly, as written, nothing indicates that any of these actions were fraudulent – all the Complaint alleges is that UVP received a prescription for Patient H, filled it, and submitted a claim to Medicaid for reimbursement.  There is no allegation that anyone believed this was a false claim when it was submitted.  Nor is there any indication that the claim was submitted after the patient should have retrieved the medicine, which might at least have provided an inference that the claim was submitted fraudulently.

The allegations suggesting fraudulent activity are even more vague.  Relator claims that "at the Bogacheks' orders and direction, Kharlamova directed that the charges for the antihistamine and amoxicillin not be reversed."  Relator lumps both the Bogacheks together in claiming they gave the order not to reverse the charge, despite the Court having warned Relator previously about grouping Defendants together.  ECF No. 267 at 14.  Relator does not allege what the "orders and direction" were that were given to Kharlamova, or when they were given.  Nor does he allege when Kharlamova gave the alleged order not to reverse the charge.  These allegations are simply insufficient to plead fraud under Rule 9(b)'s heightened standards, and as such, Relator's claims based on his allegations of submitting claims for medicine that was never received must fail.

For the foregoing reasons, Relators FCA claims are dismissed. Defendants in their numerous briefs raise other arguments as well, which the Court declines to address.

### B. State Law Claims (Counts III-V)

Relator's Third Amended Complaint also includes three state law causes of action. Count III is a claim under the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1, *et seq.* (the "IWRPA"). Count IV puts forth a claim under the Georgia False Medicaid Claims Act, Ga. Code § 49-4-168, *et seq.* Count V pleads a claim under the Massachusetts False Claims Act, Mass. Gen. Laws Chap. 12 § 5(A), *et seq.* Relator acknowledges that when he dropped his conspiracy count, he neglected to drop the appropriate Defendants from these state statutory counts. As such, he claims Counts III-V are not asserted against Defendant Storchak Pharmacy, LLC, Vladimir Storchak, or Global PL; and that Counts IV-V are not asserted against UVP, Kharlamova, Dinkevich or Shevchuk.

Relator also acknowledges his agreement with the Defendants that these state statutes "are construed substantially as the federal FCA is, and so Counts under the State Statutes rise or fall with the federal claims." Pl.'s Omnibus Opp. to Summ. J. at 15. The parties are correct in this regard. These state statutes are modeled after and interpreted consistent with the FCA. *Upton,* 900 F. Supp. 2d at 828 (pleading requirements are the same for FCA and IWRPA); *United States ex rel. Ciaschini v. Ahold USA Inc.,* No. 09-10838-JLT, 2012 U.S. Dist. LEXIS 39297 at *29-30, n.87 (D. Mass.

Mar. 22, 2012) (Massachusetts False Claims Act is modeled after FCA); *Cade v. Progressive Comm. Healthcare, Inc.,* No. 09-cv-3522-WSD, 2011 U.S. Dist. LEXIS 76085 at *8 (N.D. Ga. July 14, 2011) (Georgia False Medicaid Claims Act uses nearly identical language to FCA). Since the Court has dismissed Relator's FCA claims, his state law statutory claims fail for the same reasons as to all Defendants.

### C. Dismissal with Prejudice

When the Court granted Relator leave to file his Third Amended Complaint, it did so because the Defendants had only had to answer once, and the Court did not believe amendment would necessarily be futile. However, the Court noted that repeated failure to cure deficiencies may be grounds to deny amendment. ECF No. 267 at 21. Since filing this action in 2009, Relator has had four opportunities to plead his claims. In the process, he has dropped parties, dropped claims, and added allegations in an attempt to describe adequately a fraudulent scheme involving Defendants. It now appears to the Court that he cannot do so, though not for lack of trying.

It is true that Relator included many of the same general allegations regarding the asserted fraudulent scheme that were insufficient to survive the previous round of motions to dismiss. However, Relator did add some specific facts with respect to his allegations regarding co-payments. He included some specific allegations about his assertions that the Defendants sought

reimbursement for medication that was never issued for the intended recipient. He also tried to further plead his alter ego theory with respect to why the Defendants should all be liable for the actions of one another. Whether these amendments were sufficient are immaterial, however, due to the deficiencies identified in this Opinion. Relator's repeated failure to cure deficiencies, as well as the futility of any attempt to amend Relator's claims based on kickbacks, counsel against giving Relator an opportunity to file a Fourth Amended Complaint. *See, Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 432 (7th Cir. 2009). As such, the Court will exercise its discretion and dismiss Relator's claims with prejudice.

### D. Outstanding Matters

As a matter of general housekeeping, there are two other outstanding Motions that are related to these Summary Judgment Motions that should be resolved. After all the other co-Defendants were nearly finished briefing their summary judgment motions, Defendants Kharlamova and UVP filed a Motion to Join in all the memoranda of their co-Defendants. ECF No. 306. The Court is not impressed with the manner in which they filed this Motion. First, the Motion to Join was filed well beyond the deadline to file summary judgment motions. Second, the Motion was filed without a proper notice for presentment, in violation of Local Rule 5.3(b). That being said, the Court will grant the Motion in the interests of judicial economy, as its reasoning for why Relator's Complaint must be dismissed applies equally to them.

Relator filed a Motion to Dismiss Defendant Pharmalife Massachusetts, Inc., pursuant to Federal Rule of Civil Procedure 41(a)(2). ECF No. 301. Plaintiff requests this dismissal be without prejudice. The Court grants Relator's Motion, however, as the Court has now dismissed Relator's Complaint with prejudice, the dismissal of Pharmalife Massachusetts is also with prejudice. *Id.* (stating that an action may be dismissed at a plaintiff's request "on terms the court considers proper").

## IV. CONCLUSION

For the reasons stated herein, Relator's Third Amended Complaint is dismissed with prejudice. The Court thus grants the following motions:

1. Defendants Storchak Pharmacy, LLC's and Vladimir Storchak's Motion to Dismiss Relator's Third Amended Complaint (ECF No. 280);

2. Certain Defendants' Motion to Dismiss Relator's Third Amended Complaint (ECF No. 282);

3. Global Pharmalife, LLC's Motion to Dismiss Third Amended Complaint Pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 295);

4. Semen Dinkevich's Motion to Dismiss Third Amended Complaint Pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 296);

5. Relator's Motion to Dismiss Pharmalife Massachusetts, Inc. (ECF No. 301). Pharmalife Massachusetts is dismissed with prejudice; and

6. Joinder of Svetlana Kharlamova and Ukrainian Village Pharmacy, Inc., in the Motion to Dismiss Relator's Third Amended Complaint (ECF No. 306).

**IT IS SO ORDERED.**

                                            Harry D. Leinenweber, Judge
                                            United States District Court

**DATE: September 26, 2013**