# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**
*et al. ex rel.* **YURY GRENADYOR,**

      Relator/Plaintiff,

      v.

**UKRAINIAN VILLAGE PHARMACY, INC.** *et al.,*

      Defendants.

**Case No. 09 C 7891**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This case, which originally included federal and state false claims actions as well as this retaliation claim, has a long procedural history, mostly involving the *qui tam* portions. On September 26, 2013, this Court dismissed Plaintiff's Third Amended Complaint, including the retaliation claim, with prejudice. However, the Seventh Circuit while affirming the dismissal of the *qui tam* portions of the case reversed the dismissal of the retaliation claim. *U.S. ex rel Grenadyor v. Ukrainian Village. Pharmacy, Inc.,* 772 F. 3d 1102, 1108 (7th Cir. 2014). That Court felt that the Complaint which alleged that Plaintiff was given reduced hours and ultimately fired as a result of his telling his superiors that "he was troubled by the

kickbacks and by other wrongful acts that he claimed to have observed." If true, these allegations were sufficient to state a claim for retaliation under 31 U.S.C. § 3730(h), which requires that he prove that he was retaliated against "because of lawful acts done by [him] in furtherance of an action under this section or other efforts to stop 1 or more violations of this sub-chapter."  The Appeals Court concluded that retaliation for making an internal Complaint with one's employer is forbidden under the statute.  Defendant now moves for summary judgment on the retaliation claim.

According to the Statements of Undisputed Material Facts, Plaintiff was hired as a staff pharmacist for Defendant in April 2006.  The owners of the pharmacy, and his bosses, were former Defendants Kharlamova, Dinevich, Shevchuk, E. Bogachek, and M. Bogachek.  He had no problems with the pharmacy in 2006 or in 2007.  In 2008, around Memorial Day, Plaintiff was approached by the Pharmacy to see if he would be interested in purchasing a twenty percent equity interest in the pharmacy.  He was told to contact M. Bogachek concerning the possible purchase.  As of that date plaintiff was happy with his employment and had no complaints.  In June Defendant took steps to have Plaintiff designated as Pharmacist-in-charge, making him responsible for

the operation of the pharmacy. However, on October 13, 2008 he was fired by the pharmacy and this litigation ensued.

According to Kharlamova, Plaintiff's work performance deteriorated dramatically after he was offered the equity interest. He began acting as if he were the boss and refused Kharlamova's direct orders. Also he began neglecting his duties and certain doctors had complained that he was rude on the phone. Kharlamova also observed him removing a USB drive from the main computer which contained confidential patient information. It was also at this time that plaintiff claimed that he inadvertently observed a pharmacy check written by Kharlamova which he believed to be stealing on her part from the pharmacy. In September, 2008, shortly before he was fired, Plaintiff wrote two lengthy emails to M. Bogachek containing his accusation against Kharlamova and suggested that Bogachek bring criminal charges against her.

Plaintiff testified in his deposition that during the summer of 2008, while conducting his review of pharmacy records as part of his due diligence, he discovered that the pharmacy was violating Medicare and Medicaid regulations in three ways. The pharmacy was providing "kickbacks" to its Medicare and Medicaid patients in form of gifts to induce them to choose the pharmacy over other providers; the pharmacy was routinely

waiving the co-payments regardless of need; and the pharmacy made claims for reimbursement even where the patient failed to pick up the prescription.

Plaintiff in his deposition testified that he made two reports of his concerns to the pharmacy management. On the first occasion he brought his concerns to Kharlamova, Dinkevich, and an employee Irina Milovanova. He expressed his concern that the pharmacy was engaged in fraudulent conduct. Kharlmova and Dinkevich dismissed his concerns and advised him that he was asking too many questions and that this was the only way to bring Medicare and Medicaid customers into their store. He continued to investigate the fraud during July 2008, and in late July or early August 2008, plaintiff again brought his concerns to the pharmacy management which again dismissed his warnings and told him that he would not become a shareholder if he would not drop the fraud allegations.

The Defendant responds to these claims, denying that it was doing anything wrong and specifically denies that plaintiff brought his concerns to their attention. Defendant points out that plaintiff, a prolific e-mail writer who wrote many e-mails to the pharmacy management and specifically to M. Bolachek complaining about many things including what he perceived as Kharlamova looting the pharmacy, did not on a single occasion

mention his concerns over the pharmacy violating Medicare and Medicaid regulations, a version Sherlock Homes story about the dog that didn't bark. Plaintiff admits that there is no documentary evidence of his complaints about Medicare and Medicaid fraud. His reason for not documenting his concerns in his e-mails was not particularly clear. He testified:

> "[W]ell, the answer, it's very simple. I am a pharmacist. I studied in top ten best the pharmacy schools in the country. In each and every – in every pharmacy school including the – at the University of Illinois, you have a mandatory course on the pharmacy law and the health care law, interesting course. And we have studied in the particular course with the pharmacy law and the health care law what the pharmacists and the physicians and the pharmacies as a business and the hospitals and the FDA can and cannot do, kickbacks, inducement, Anti-Kickback Statute, things like that. I did not talk about this kind of things in the email because I stayed on the side of caution. I had erred on the side of caution because Internet, its public domain. Email, Internet, it's a public domain. And for the scheme, I did not feel comfortable talking about this kind of things in the public domain as a pharmacist, as a clinical pharmacist finished one of the ten best schools in the country and who had – as any other pharmacist in any other school who had studied health care and pharmacy law about these kind of things, I stay on the side of caution; and that's a thing. Then I – then I – then I found out at a later time that I was – I was – that I was correct and it was a good thing that I had stayed on the side of caution."

(ECF No. 448, Y. Grenadyor Dep. At 121:23-126:16.)

Plaintiff has one more argument to make: that the pharmacy has given numerous, inconsistent accounts of the reason for his termination. He points out that there is no documentation

created during Plaintiff's employment that reference any performance issues, disciplines or warnings. Further he received a positive performance review as late as September 8, 2008, a mere five weeks before he was fired. Nor did Defendant report Plaintiff to the Illinois Department of Financial and Professional Regulation regarding his conduct, nor did Defendant disclose any alleged HIPAA violations based on Plaintiff's conduct to any customer or governmental agency. When Defendant notified the Illinois Office of Employment Security that Plaintiff was no longer employed at the pharmacy, Defendant cited a lack of work as the reason for Plaintiff's termination.

The issue in this retaliatory discharge case is simple: did the Defendant discharge Plaintiff because of his disclosure to them that he was aware of the alleged illegal schemes, with which he charged Defendant with committing, or was he discharged due to performance issues and his disparagement of Kharlamov? If the former his claim will stand, if the latter the claim will be dismissed.

## II. **DISCUSSION**

To prove his case a plaintiff must prove three elements: (1) the plaintiff acted in furtherance of an FCA enforcement action, (2) the employer knew the plaintiff was engaged in protected conduct, and (3) the employer was motivated to take an

adverse employment action against the plaintiff because of the protected conduct. *Singer v. Progressive Care, SC,* 2016 WL 4245503, *8 (N.D. Ill. Aug. 11, 2016). The parties argue over whether a "but for standard" applies to both the Illinois and the federal action or whether a plaintiff can prevail on a mixed motive causation standard on the Illinois claim. The Court agrees with Defendant that both acts are subject to the same causation standard. Plaintiff agrees that this is the case with the federal law but contends that Illinois is otherwise. This does not make a great deal of sense because the courts have said all along that the cases are nearly identical. *Perez-Garcia v. Clyde Park Dist.,* 2015 U.S. Dist. LEXIS 135244 at *25 (N.D.Ill. Oct. 5, 2015).

As indicated above, the crux of Defendant's argument is the "dog that didn't bark:" He raised many complaints about the unfair treatment he was receiving and about Kharlamova's thievery, and if he was truly of the belief that Defendant was violating federal regulations, he would have mentioned his concerns in his prolix e-mails. Since he did not do so he cannot now rely on his deposition testimony that he warned them about his concerns of illegality. The Defendant cites *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) in support of its position that a person cannot create a question

of fact by later contradicting earlier testimony. *Slowiak,* however, does not fit the situation here. In *Slowiak* the plaintiff in pre-trial testimony said that he did not suffer or that he did not know whether he had suffered any damages as a result of defendant's actions. He later supplied an affidavit that clearly stated that he did suffer damages caused by the defendant's actions, which, according to the court, contradicted his earlier deposition. Here, however, Plaintiff clearly testified in his deposition that he did inform Defendant at two separate meetings that he was aware of the alleged schemes. The inconsistency was his pretrial statements (or lack of statements) that are alleged to be inconsistent with his pretrial testimony. Moreover, Plaintiff gave an explanation (although one not very articulate) for this alleged inconsistency. As the Court understands it, Plaintiff did not want to put on the internet (via e-mail) what was to him clearly a violation of federal law. He was an employee (the pharmacist-in-charge at the time) and putting out in the cyberworld a description of federal Medicare and Medicaid violations could have placed him in danger of being made a party to the fraud. He mentions that it would not be smart to put such information out in the public domain. So, according to his testimony, he did not do so, opting to warn them verbally instead.

Therefore what we are left with is Plaintiff's deposition testimony that he advised the Defendant's shareholders of his suspicions of federal violations and, after doing so he was fired. This discrepancy between his deposition testimony which gives his explanation for his reticence, and the denials of the Defendant's shareholders that he made them aware of his concerns, is a factual issue that cannot be resolved on summary judgment. The Motion for Summary Judgment is denied.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment on the retaliation claim is denied.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Dated: 3/29/2018